**NOT YET SCHEDULED FOR ORAL ARGUMENT**

**Nos. 24-1346 & 24-1352**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

CenturyTel of Montana, Inc.,
*a subsidiary of Lumen Technologies, Inc.*,

> Petitioner/Cross-Respondent,

v.

National Labor Relations Board,

> Respondent/Cross-Petitioner,

and

International Brotherhood of Electrical Workers
Local Union 768,

> Intervenor.

---

On review from the National Labor Relations Board
Case No. 19-CA-283839

---

**BRIEF OF INTERVENOR INTERNATIONAL
BROTHERHOOD OF ELECTRICAL WORKERS
LOCAL UNION 768**

---

Jonathan D. Newman
Jacob J. Demree
SHERMAN DUNN, P.C.
900 Seventh Street, N.W.
Suite 1000
Washington, D.C. 20001
(202) 785-9300
newman@shermandunn.com
demree@shermandunn.com

April 11, 2025

*Counsel for Intervenor*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

**Parties and Amici**

All parties, intervenors, and amici appearing before the National Labor Relations Board and in this Court are listed in the Brief for Respondent/Cross-Petitioner National Labor Relations Board.

**Rulings Under Review**

References to the rulings at issue appear in the Brief for Respondent/Cross-Petitioner National Labor Relations Board.

**Related Cases**

To counsels' knowledge, neither this case nor any other related cases were previously before this Court or any other court.

/s/ Jacob J. Demree
Jonathan D. Newman
Jacob J. Demree
SHERMAN DUNN, P.C.
900 Seventh Street, N.W.
Suite 1000
Washington, D.C. 20001
(202) 785-9300
newman@shermandunn.com
demree@shermandunn.com

*Counsel for Intervenor International Brotherhood of Electrical Workers Local Union 768*

# DISCLOSURE STATEMENT

In accordance with Circuit Rule 26.1, Local Union 768 of the International Brotherhood of Electrical Workers, AFL-CIO, provides the following disclosure statement:

Local 768 is a labor organization and an unincorporated association. It has no parent companies, and no publicly-held company holds a ten percent or greater ownership interest in it. No members of Local 768 have issued shares or debt securities to the public.

/s/ Jacob J. Demree
Jonathan D. Newman
Jacob J. Demree
SHERMAN DUNN, P.C.
900 Seventh Street, N.W.
Suite 1000
Washington, D.C. 20001
(202) 785-9300
newman@shermandunn.com
demree@shermandunn.com

*Counsel for Intervenor International Brotherhood of Electrical Workers Local Union 768*

# TABLE OF CONTENTS

Certificate as to Parties, Rulings, and Related Cases ...............................i

Disclosure Statement ...................................................................ii

Table of Authorities ....................................................................v

Glossary ...................................................................................ix

Introduction ...............................................................................1

Statutes and Regulations ............................................................3

Statement of the Case ................................................................4

    I.     Factual Background ..................................................4

    II.    Procedural Background ...........................................11

Summary of the Argument ........................................................14

Standard of Review ...................................................................15

Argument...................................................................................16

    Local 768 Is Entitled to the Requested Information Because
It Demonstrated the Relevance of the Requested
Information.............................................................................16

        A.    The Relevance of Local 768's Request Was Shown
on the Face of Its Request and Reaffirmed During
the Initial Conversation About the Request. ..............16

        B.    The Past Grievances and TCC Correspondence
Further Prove that Local 768 Had a Reasonable
Basis for Its Request. ................................................25

            1.    CenturyTel Waived Its Arguments Against
Relying on Evidence Introduced at the
Hearing.........................................................25

2. The Board's Decision to Consider the Past Grievances and TCC Correspondence Was Right on the Merits. ............................................. 27

3. The Board's Longstanding Practice of Considering Facts Raised for the First Time at the Hearing Is Consistent with the NLRA and CenturyTel's Due Process Rights. ............... 32

4. The ALJ Did Not Abuse Her Discretion in Declining to Exclude Materials Not Produced in Response to CenturyTel's Subpoena. ........................................................ 36

Conclusion ..................................................................... 37

Certificate of Compliance ...........................................................

Certificate of Service ................................................................

# TABLE OF AUTHORITIES

**Cases**                                                             **Page(s)**

*Barnard Eng'g Co.*,
282 N.L.R.B. 617 (1987) .................................................................. 33

*Blue Diamond Co.*,
295 N.L.R.B. 1007 (1989) ...........................................................22-23

*Champ Corp.*,
291 N.L.R.B. 803 (1988), *enforced*, 913 F.2d 639 (9th Cir. 1990) ................................................................................................ 36

*Corson & Gruman Co.*,
278 N.L.R.B. 329 (1986), *enforced*, 811 F.2d 1504 (4th Cir. 1987) ................................................................................................ 33

*Country Ford Trucks, Inc. v. NLRB*,
229 F.3d 1184 (D.C. Cir. 2000)..................................................20-21

*Crowley Marine Servs., Inc. v. NLRB*,
234 F.3d 1295 (D.C. Cir. 2000) (per curiam) ............................... 16

*Crozer-Chester Med. Ctr. v. NLRB*,
976 F.3d 276 (3d Cir. 2020)........................................................... 34

*Detroit Edison Co. v. NLRB*,
440 U.S. 301 (1979) ...................................................................... 28

*Diamond Trucking, Inc.*,
365 N.L.R.B. 646 (2017) ............................................................... 33

*DirectSat USA, LLC v. NLRB*,
925 F.3d 1272 (D.C. Cir. 2019).................................................34-35

*Disneyland Park*,
350 N.L.R.B. 1256 (2007) ........................................................ 2, 17

*Ford Motor Co. v. NLRB*,
  441 U.S. 488 (1979) ................................................................ 16, 34

*George Koch & Sons, Inc.*,
  295 N.L.R.B. 695 (1989) ...............................................................30-31

*Hertz Corp. v. NLRB*,
  105 F.3d 868 (3d Cir. 1997)...........................................................33-34

*Hilton Hotel Emp. LLC*,
  372 N.L.R.B. No. 61 (Feb. 28, 2023) ............................................. 19

*Hush-A-Phone Corp. v. United States*,
  238 F.2d 266 (D.C. Cir. 1956)...........................................................6

*Magnet Coal, Inc.*,
  307 N.L.R.B. 444 (1992), *enforced mem.*, 8 F.3d 71 (D.C. Cir.
  1993) ................................................................................................31

*McAllister Towing & Transp. Co.*,
  341 N.L.R.B. 394 (2004), *enforced per curiam*, 156 F. App'x
  386 (2d Cir. 2005) .........................................................................36

*N.Y. & Presbyterian Hosp. v. NLRB*,
  649 F.3d 723 (D.C. Cir. 2011)...........................................................2

*Napleton 1050, Inc. v. NLRB*,
  976 F.3d 30 (D.C. Cir. 2020) ..................................................... 16, 36

*NLRB v. Acme Indus. Co.*,
  385 U.S. 432 (1967) .......................................................2, 16-17, 22

*NLRB v. Associated Gen. Contractors of Cal., Inc.*,
  633 F.2d 766 (9th Cir. 1980) ........................................................24

*NLRB v. Leonard B. Hebert, Jr. & Co.*,
  696 F.2d 1120 (5th Cir. 1983) ......................................................31

*Ohio Power Co.*,
216 N.L.R.B. 987 (1975), *enforced*, 531 F.2d 1381 (6th Cir. 1976) ........................................................................18-19, 32-34

*Oil, Chem. & Atomic Workers Loc. Union No. 6-418 v. NLRB*,
711 F.2d 348 (D.C. Cir. 1983)........................................ 19-20, 30, 34

*Pergament United Sales, Inc. v. NLRB*,
920 F.2d 130 (2d Cir. 1990)........................................................34-35

*Pub. Serv. Co. of N.M. v. NLRB*,
843 F.3d 999 (D.C. Cir. 2016)................................................... 16, 34

*Salem Hosp. Corp. v. NLRB*,
808 F.3d 59 (D.C. Cir. 2015) ............................................................36

*San Diego Newspaper Guild, Loc. No. 95 v. NLRB*,
548 F.2d 863 (9th Cir. 1977) ......................................................23-25

*Tchrs. Coll., Columbia Univ. v. NLRB*,
902 F.3d 296 (D.C. Cir. 2018)....................................................... 2, 17

*U.S. Testing Co. v. NLRB*,
160 F.3d 14 (D.C. Cir. 1998) ............................................................17

*UFCW Loc. 400 v. NLRB*,
989 F.3d 1034 (D.C. Cir. 2021)........................................................27

*Use of the Carterfone Device in Message Toll Tel. Serv.*,
13 F.C.C.2d 420 (1968) ......................................................................6

**Statutes**

29 U.S.C. § 157 ...................................................................................3

29 U.S.C. § 158 ...................................................................................4

29 U.S.C. § 158(a)(1)..........................................................................3, 11

29 U.S.C. § 158(a)(5)..................................................................... 3, 11, 16

29 U.S.C. § 158(d) ........................................................... 3-4, 16

29 U.S.C. § 160(a) ................................................................ 4

29 U.S.C. § 160(e) ............................................... 4, 15-16, 26

29 U.S.C. § 160(f) ................................................................ 4

**Other Authorities**

47 C.F.R. § 64.702 ............................................................... 6

Jack Fiorito et al., *Union Structural Choices, in The State of
Unions* 103 (George Strauss et al. eds., 1991) ............................... 29

# GLOSSARY

ALJ                     administrative law judge

Board                   National Labor Relations Board

CenturyLink             CenturyLink, Inc.

CenturyTel              CenturyTel of Montana, Inc.

IBEW                    International Brotherhood of Electrical Workers

JA                      Joint Appendix

Local 768               IBEW Local Union 768

Lumen                   Lumen Technologies, Inc.

National Techs          National Lumen Technicians

NLRA                    National Labor Relations Act

NLRB                    National Labor Relations Board

TCC                     IBEW Telecommunications Council

## INTRODUCTION

Local 768 represents CenturyTel technicians who maintain tele-communications infrastructure in Northwest Montana. Local 768 technicians work on both transmission systems and customer premises equipment. In July 2021, Local 768 learned that Lumen — CenturyTel's parent company — was using non-bargaining unit employees to perform bargaining unit work in other jurisdictions, including work inside customers' premises. Local 768 had previously struggled with bargaining unit work being diverted to non-bargaining unit employees, and a few years earlier, had filed grievances over the issue.

Rather than rush into filing a grievance, Local 768 requested information from CenturyTel to determine if National Techs were performing bargaining unit work in Local 768's jurisdiction. Local 768 explained to CenturyTel that it was submitting an information request "regarding National Techs working in Local 768's jurisdiction," JA344, and that it was doing so "for purposes of monitoring the collective bargaining agreement between the parties and the investigation, preparation and processing of grievances in the event the Union feels there has been a violation of any provision(s) therein." JA346. The same day Local 768 made its request,

1

CenturyTel confirmed that National Techs *had*, in fact, been working in the area. Nevertheless, CenturyTel refused — and continues to refuse — to provide the requested information.

Under the NLRA, an employer's duty to bargain in good faith includes the duty to "provide information that is needed by the bargaining representative for the proper performance of its duties." *NLRB v. Acme Indus. Co.*, 385 U.S. 432, 435-36 (1967). The duty to provide information is dependent upon the probability that the requested information is relevant. *N.Y. & Presbyterian Hosp. v. NLRB*, 649 F.3d 723, 729-30 (D.C. Cir. 2011). When a union requests information about non-bargaining unit employees, it must explain why the information is relevant. In doing so, the union need only show "that the information is of probable or potential relevance," *Tchrs. Coll., Columbia Univ. v. NLRB*, 902 F.3d 296, 302 (D.C. Cir. 2018) (quoting *N.Y. & Presbyterian Hosp.*, 649 F.3d at 730), and "[a]ll that is required is 'a reasonable belief, supported by objective evidence, that the requested information is relevant,'" *id.* at 302-03 (quoting *Disneyland Park*, 350 N.L.R.B. 1256, 1258 (2007)).

The question before this Court is simple: Does substantial evidence support the NLRB's finding that the General Counsel established that

Local 768 demonstrated the relevance of its requested information or that the relevancy of its request should have been apparent to CenturyTel under the circumstances? The answer is plainly "yes." The Court should therefore enforce the Board's order requiring CenturyTel to respond to Local 768's information requests.

## STATUTES AND REGULATIONS

Section 7 of the NLRA, 29 U.S.C. § 157, provides in relevant part:

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection . . . .

Section 8(a)(1), *id.* § 158(a)(1), makes it an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title." Section 8(a)(5), *id.* § 158(a)(5), makes it an unfair labor practice for an employer "to refuse to bargain collectively with the representatives of his employees." Section 8(d), *id.* § 158(d), provides in relevant part:

> For the purposes of this section, to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation

of an agreement, or any question arising thereunder . . . .

Under Section 10(a), 29 U.S.C. § 160(a), "[t]he Board is empowered . . . to prevent any person from engaging in any unfair labor practice (listed in section 158 of this title) affecting commerce." The Board may petition in court for enforcement of its orders under Section 10(e), *id.* § 160(e), and a respondent found to have committed an unfair labor practice may petition for review under Section 10(f), *id.* § 160(f). "No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances," and "[t]he findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive." *Id.* § 160(e).

## STATEMENT OF THE CASE

### I. Factual Background

CenturyTel "is a national telecommunications provider with a presence in several states." JA442. Local 768 has represented CenturyTel's (and CenturyTel's predecessors') employees in Northwest Montana for decades. JA23:10-12, 218, 442. Local 768 is "the sole and exclusive

bargaining agent," JA218, for employees working on CenturyTel infrastructure between the central office in Kalispell and all the way "inside to the customer's desk," JA24:25-25:1. The seventeen or eighteen technicians in Local 768's bargaining unit work across the Flathead Valley, from Olney to Polson, Montana. JA109:22-110:7, 218.

In the central office, Local 768 technicians maintain switching, data, phone, and DSL equipment. JA24:13-17. Cable technicians "take care of . . . the major repairs" to the cable plant. JA25:23-24. Customer service technicians primarily maintain switching equipment and "perform[] work up to residential units." JA25:7-8. Business services technicians "run jumpers in the central office to connect . . . it to the outside plant," "[d]o all the outside plant connections, [and] get [services] to the customer's prem[ises]." JA24:23-25.

Local 768 business services technicians also work inside customers' premises, after what is known as the "point of demarcation." JA24:25-25:1. The point of demarcation "is the point of termination" where transmission ends and the customer's premises begin. JA37:24. Customer premises work is subject to different legal requirements than pre-demarcation transmission work. Typically, customers have the right to install

their own equipment after the demarcation point. *See Hush-A-Phone Corp. v. United States*, 238 F.2d 266, 269 (D.C. Cir. 1956); *Use of the Carterfone Device in Message Toll Tel. Serv.*, 13 F.C.C.2d 420, 424 (1968). Although Bell operating companies might need to outsource customer premises equipment work after the point of demarcation, *see* 47 C.F.R. § 64.702, nothing prevents CenturyTel from providing services inside customers' premises in Local 768's jurisdiction because it has never been subject to Bell operating company requirements, JA123:11. Indeed, Local 768's technicians "are usually responsible for running the circuit from the equipment in the central office to the field, and then into the premise equipment." JA42:23-43:1.

On July 27, 2021, Local 768 Business Manager George Bland received an email from the TCC — which brings together IBEW locals representing Lumen, CenturyLink, and CenturyTel bargaining units, JA32:11-15 — indicating that National Techs were "coming in after circuit installs and picking up the hand off" into customers' premises. JA330. National Techs are Lumen employees and are not members of Local 768's CenturyTel bargaining unit. JA353, 355. Locals in Missouri and Texas responded to the TCC email with more evidence that National

Techs were performing bargaining unit work.  JA330, 332.

Local 768 is no stranger to work diversion.  In 2018, Local 768 filed two grievances against CenturyTel's predecessor, alleging that it was using non-bargaining unit workers to perform bargaining unit work.  In the first, Local 768 claimed that the company had failed to notify it that the company had brought in non-Local 768 employees to perform unit work.  JA335.  In the second, Local 768 argued that the company had violated the collective bargaining agreement by subcontracting out bargaining unit work.  JA338.  The company settled both grievances.  JA48:18-21, 49:19-23.

On August 9, 2021, TCC Chairman Joseph Lambert emailed the TCC locals a template information request about National Techs.  JA340.  He asked that the locals "send this out as early as tomorrow or ASAP.  Hopefully this will generate a response containing some useful info."  *Id.* The next day, Bland forwarded the request to CenturyTel Manager of Region Operations John Bemis.  In his email attaching the information request, Bland explained that the information requested was "regarding National Techs working in Local 768's jurisdiction."  JA344.  And the attached information request explained that the request was being made

7

to "monitor[] the collective bargaining agreement" and determine if there "has been a violation of any provision(s) therein." JA346. As relevant here, Bland's email included the following requests:

1. How many National Lumen Technicians are currently working in Local Union 768's jurisdiction? Please provide the exact number of technicians. . . .

3. How long have the National Lumen Technicians been working within Local Union 768's jurisdiction? Please provide the starting date. . . .

5. Please provide the names of any and all Lumen customers in Local Union 768's jurisdiction that these National Lumen Technicians have performed work for.

6. Which Managers and Director(s) do these National Lumen Technicians report to? Please provide the names and titles of all.

7. What Company department or entity dispatches the National Lumen Technicians? How do they receive their work orders?

8. How do the National Lumen Technicians close out their work orders?

9. Which Company systems, information and databases do the National Lumen Technicians have access to?

10. Which Company departments and personnel do the National Lumen Technicians interact with? Please list any and all.

11. What Company location(s) in the state of Montana do the National Lumen Technicians physically report to?

12.  What Company location(s) in Local Union 768's jurisdiction do the National Lumen Technicians have direct access to?

13.  Which Company buildings in the state of Montana do these National Lumen Technicians have direct access to?

14.  Which Company buildings in the state of Montana have these National Lumen Technicians performed work in? . . .

17.  Please provide the most current job brief for Lumen National Technicians.

JA346.[1]

"The first thing" Bemis did after receiving the information request "was pick up the phone." JA141:25. Bemis was concerned that CenturyTel may have violated the collective bargaining agreement. JA142:3-4. Bland asked Bemis "if there were any national techs doing work in [his] jurisdiction," and Bemis responded that there had been. JA52:1-5. Bemis forwarded Local 768's requests to Lumen's Manager of Field Operations the same day. JA348-50.

Bland re-sent his request on August 25 and stated that he would be

---

[1]  Although requests 11, 13, and 14 refer to Montana as a whole, the Board and ALJ focused on those requests only to the extent they applied in Local 768's jurisdiction. JA397 n.7, 442-43.

filing an unfair labor practice charge over the company's refusal to provide the requested information. JA348. Lumen Senior Human Resources Advisor Keller Noble responded on September 1, JA351, and confirmed that "[t]here are two National Technicians in the state of Montana," who perform "[e]quipment installs, network troubleshooting, customer support, equipment maintenance, equipment decommissioning, [and] cable locating," JA355. Despite the overlap between National Techs' job functions and Local 768's work jurisdiction, Noble represented that "[t]here is no work being performed by National Lumen Technicians in local Union 768's jurisdiction." *Id.* Noble asked why the information was relevant when the National Techs were not represented by Local 768 and were not performing bargaining unit work. JA353-55.

Bland responded on September 13 that "the Union has the right to make an *independent* determination on whether or not these National Technicians are performing bargaining unit work or have performed bargaining unit work previously." JA359. The requested information would help the union make that determination. JA359-62. Keller responded on September 23 that the requested information was "outside the scope of IBEW 768's jurisdiction." JA375. Bland replied and again renewed

the union's requests. He explained that "if these National Technicians . . . are performing the work of employees who are covered by the CBA, then certainly such a[] request is not outside of scope of jurisdiction." *Id.*

To date, CenturyTel has refused to provide information in response to the above requests.

## II.   Procedural Background

Bland filed an unfair labor practice charge against CenturyTel on October 1, 2021, JA148, and the General Counsel filed a complaint, JA152-59. After a hearing, the ALJ found that CenturyTel violated Sections 8(a)(5) and (1) of the NLRA by refusing to respond to Local 768's information request. JA408. The ALJ concluded that Local 768's requests were relevant because they "were plainly aimed at ascertaining whether Respondent had been violating the parties' contract by utilizing the National Techs to perform Local 768 work." JA405. Because "the parties had a history of disagreement over what constituted work within Local 768's jurisdiction," the relevance of Local 768's request should have been apparent to CenturyTel. *Id.* In any event, the union "had an ample objective, factual basis for requesting this information." JA406. "Local 768, based on objective information provided by its sister locals about

11

Respondent's use of National Techs, sought to ensure that Respondent's recent history of work diversion within the Montana Local 768 Market Area was not repeating itself." *Id.*

CenturyTel excepted to the ALJ's decision. It claimed that "the union had no evidence (either direct or indirect) of work diversion within Local 768's jurisdiction." JA465. "Although there is no duty to inform the employer of the specific basis for the information request," JA466, there were "no first-hand reports of work diversion occurring in Local 768's jurisdiction," JA468, and the TCC emails were merely "attenuated hearsay," JA469. The past grievances were "limited, remote, unrelated disputes," not evidence of a "history of work diversion." JA473.

The Board rejected CenturyTel's exceptions and adopted the ALJ's order. JA442. First, the Board found that "Bemis's contemporaneous admission [in his call with Bland] that National Technicians had worked in the Union's jurisdiction established the relevance of the requested information," JA444, and that was an "independently sufficient" basis for requiring CenturyTel to comply with the information request, JA445. Second, as a separate independent ground, the Board agreed that the relevance of the requested information should have been apparent to

CenturyTel because through Bemis's conversation with Bland, Century-Tel "was put on notice that the Union was seeking information regarding a possible diversion of unit work and that the Union had been told by the Respondent that National Technicians had worked in the Union's jurisdiction." JA445. Third, and "[i]ndependent of the foregoing [two] grounds," the Board dismissed CenturyTel's arguments about the weight of the past grievances and the TCC's reports of work diversion in other bargaining units, applying "its longstanding rule that relevance can be shown at the unfair labor practice hearing." *Id.*

Then-Member Kaplan dissented, arguing that Bemis's statement did not establish relevance and that the Board should not rely on facts disclosed for the first time at the unfair labor practice hearing to determine relevance. JA448-49. Member Kaplan did "not pass on whether the information disclosed at the hearing was sufficient to establish relevance. But assuming it was sufficient, and assuming the Union renewed its information request, the Respondent would then act at its own peril if it failed to respond." JA449 n.10.

CenturyTel petitioned for review in this Court, and the Board cross-petitioned for enforcement.

## SUMMARY OF THE ARGUMENT

**A.** The simple question before this Court is whether substantial evidence supports the NLRB's holding that the General Counsel showed that Local 768 had demonstrated the relevance of its requested information.

Here, the face of the email submitting the information request and the information request itself demonstrated the relevancy of the requested information. Further, immediately upon receiving the request, Bemis called Bland and stated that there were National Techs working in the area. Therefore, the relevance of Local 768's request was affirmed during that conversation. Local 768 did not have to conduct its own investigation or point to specific violations to support its request.

**B.** Although it is not necessary for the Court to reach the issue, the Board was correct in considering Local 768's past grievances and correspondence with other TCC locals even though that evidence was first produced at the hearing.

First, CenturyTel has waived its arguments on this issue by not raising them below. Second, collective bargaining in the telecommunications industry relies on coordination and information-sharing through

entities like the TCC. The fact that Local 768 learned about possible work diversion through the TCC does not in any way lessen the reasonableness of Local 768's concern that National Techs might be performing unit work in its own jurisdiction, especially given Bemis's comments about National Techs in the area. Likewise, Local 768's prior grievances are further evidence that it had a reasonable belief that unit work might be at risk of diversion. Though the grievances concerned work for a predecessor of CenturyTel, they showed that Local 768's unit was ripe for work diversion, making the need to investigate the presence of National Techs, who performed unit work in other jurisdictions, more urgent.

The Board's consideration of evidence raised for the first time at the hearing was consistent with the NLRA, and did not violate CenturyTel's due process rights because the complaint gave CenturyTel fair notice, and CenturyTel's conduct was fully and fairly litigated. Nor did the ALJ abuse her discretion in refusing to exclude evidence inadvertently not disclosed to CenturyTel in response to a subpoena, because CenturyTel did not suffer any prejudice from her decision.

## STANDARD OF REVIEW

"The findings of the Board with respect to questions of fact if

supported by substantial evidence on the record considered as a whole shall be conclusive." 29 U.S.C. § 160(e). Because Congress assigned the Board "the primary responsibility of marking out the scope . . . of the statutory duty to bargain," *Ford Motor Co. v. NLRB*, 441 U.S. 488, 496 (1979), this Court pays "'great deference' . . . to the Board's determinations of the scope of an employer's obligation to provide requested information to a union," *Pub. Serv. Co. of N.M. v. NLRB*, 843 F.3d 999, 1004 (D.C. Cir. 2016) (quoting *Crowley Marine Servs., Inc. v. NLRB*, 234 F.3d 1295, 1297 (D.C. Cir. 2000) (per curiam)). The Court reviews the Board's procedural rulings for abuse of discretion. *Napleton 1050, Inc. v. NLRB*, 976 F.3d 30, 39 (D.C. Cir. 2020).

## ARGUMENT

**Local 768 Is Entitled to the Requested Information Because It Demonstrated the Relevance of the Requested Information.**

### A. *The Relevance of Local 768's Request Was Shown on the Face of Its Request and Reaffirmed During the Initial Conversation About the Request.*

As part of their duty to bargain in good faith under Sections 8(a)(5) and 8(d) of the NLRA, employers have an obligation "to provide information that is needed by the bargaining representative for the proper

16

performance of its duties." *Acme Indus. Co.*, 385 U.S. at 435-36. When a union requests information about bargaining unit members, that information is presumptively relevant to the union's duties and must be provided. *Disneyland Park*, 350 N.L.R.B. at 1257.

Information concerning non-unit employees, however, is not presumptively relevant. When requesting information about employees outside of the bargaining unit, a bare assertion that the union needs the information is not enough. *Tchrs. Coll., Columbia Univ.*, 902 F.3d at 302. Instead, the union must demonstrate the relevance of the requested information. *Id.* When determining whether a union has demonstrated the relevancy of its request for non-bargaining unit information, this Court and the Board have made clear that "context is everything." *U.S. Testing Co. v. NLRB*, 160 F.3d 14, 19 (D.C. Cir. 1998).

Here, the relevancy of Local 768's request was obvious and explained in Bland's cover email and in the request itself. Bland's email explained that he was attaching a request for information "regarding National Techs working in Local 768's jurisdiction," JA344, and the attached request stated that its purpose was to "monitor[] the collective bargaining agreement" and determine if there "has been a violation of any

provision(s) therein," JA346. It is difficult to imagine what else Local 768 could have said to notify the company of the relevance of its request.

Even if the relevancy of Local 768's request was not sufficiently apparent on the face of the cover email and request, the subsequent communications between Local 768 and CenturyTel Manager Bemis unquestionably established the relevancy of the request. "The first thing" that Bemis did after receiving the request "was pick up the phone," JA141:25, because he was concerned that there may have been a violation of the collective bargaining agreement, JA142:3-4. In that telephone conversation, Bemis confirmed that National Techs "had been in [Local 768's] jurisdiction a few times," cementing the possibility that non-unit employees were in the area performing unit work. JA52:4-5.

CenturyTel makes much of the fact that the conversation between Bland and Bemis occurred after Bland submitted the information request. CenturyTel Br. 26-27. This Court and the Board, however, have held that the relevancy of a union's information request can be established through subsequent communications between the union and the employer.

Relevance is determined "in the light of the entire pattern of facts,"

18

including facts raised in the give-and-take of communications after the initial request. *Ohio Power Co.*, 216 N.L.R.B. 987, 991 n.9 (1975), *enforced*, 531 F.2d 1381 (6th Cir. 1976). For example, in *Hilton Hotel Employer LLC*, 372 N.L.R.B. No. 61 (Feb. 28, 2023), a union sent a request for information that was denied over a month later. The union continued to communicate with the employer about the request, but the employer never provided the requested information. Rejecting the employer's argument that it should determine whether the union had a reasonable basis for its request based strictly on the initial communication, the Board examined the union's "progressive clarification of the parameters of its request," including communications after the employer first denied the request, to find that the union ultimately established the request's relevance. *Id.* slip op. at 4.

Similarly, in *Oil, Chemical & Atomic Workers Local Union No. 6-418 v. NLRB*, 711 F.2d 348 (D.C. Cir. 1983), this Court considered several cases where employers refused to provide information in response to unions' information requests. The unions requested health and safety information and explained the reasoning underlying the requests through subsequent correspondence with the employers, including, in one case, at

19

a meeting several months later. Assuming for the sake of argument that the information was not presumptively relevant, the Court held that the unions established relevance in part through their explanations of the relevance of the requests *after* the requests were made. *Id.* at 361. The Court further considered communications after the requests to find that the unions limited the scope of their requests: "There is no merit to the contention that the propriety of a union's continuous request for information must be determined solely from the wording of the initial communication of that request." *Id.* at 363 n.40.

The Court reached a similar conclusion in *Country Ford Trucks, Inc. v. NLRB*, 229 F.3d 1184 (D.C. Cir. 2000). In that case, a union requested information for the purpose of bargaining over a first contract. The employer refused to provide the requested information. Several months later, after the union filed a failure-to-bargain charge with the Board, the union notified the employer's counsel that the request "applied to bargaining unit employees" and offered to limit the scope of its request. *Id.* at 1188. Though the requested information was presumptively relevant, the Court explained in the alternative that the union's communication with the employer's counsel ultimately established the relevance of

the request.  *Id.* at 1192.

Though Local 768 established the relevancy of its request both at the time it made it, and certainly through the conversation with Bemis, CenturyTel tries to muddy the waters.  First, CenturyTel claims that there was in fact substantial evidence that National Techs were *not* performing bargaining unit work, since no keys to the Kalispell central office had been issued to any National Techs.  CenturyTel Br. 39-40.  That argument grossly narrows Local 768's scope of work.  Local 768-represented technicians operate across a "large jurisdiction."  JA110:7.  They work in the central office *and* in customers' premises.  *See* JA24:1-25:24.  National Techs also "work in customers' offices or premises."  JA32:5-7.  Therefore, a National Tech could perform unit work (providing services in customers' premises) without ever entering or needing a key to the central office.

Second, CenturyTel argues that all Bemis's call shows is that National Techs were working in the *geographic area*, not that they were performing work in Local 768's work jurisdiction.  CenturyTel Br. 39.  According to CenturyTel, without "additional facts," Local 768's "unsubstantiated suspicion" was not "transform[ed] . . . into a reasonable belief."

*Id.*

Third, CenturyTel faults Local 768 for not independently investigating whether work had been diverted before making its request, since Bland's initial request did not refer to particular violations "in Montana or elsewhere," CenturyTel Br. 27, and Bemis's comment was not an "admission that unit work had been diverted," *id.* at 30.

CenturyTel's arguments confuse the merits of a potential grievance over the work performed by National Techs with Local 768's right to information necessary to determine whether to file such a grievance. The Supreme Court has explained that the Board orders employers to provide information "upon the *probability* that the desired information [may be] relevant, and that it would be of use to the union in carrying out its statutory duties and responsibilities." *Acme Indus. Co.*, 385 U.S. at 437 (emphasis added). "This discovery-type standard decide[s] *nothing* about the merits of the union's contractual claims." *Id.* (emphasis added). As a result, a union doesn't have to "establish in advance exactly how the information [it requested] would be helpful in pursuing a possible grievance, that the [requested information] would aid the Union, or that any information [that it requested] is reliable." *Blue Diamond Co.*, 295

N.L.R.B. 1007, 1007 (1989).

In attempting to heighten the settled liberal, discovery-type standard for establishing possible relevance, CenturyTel relies on *San Diego Newspaper Guild, Local No. 95 v. NLRB*, 548 F.2d 863 (9th Cir. 1977). *See* CenturyTel Br. 27-28. In *San Diego Newspaper Guild*, a union requested information about non-unit employees that were training to be strike replacements. The non-unit employees were not performing bargaining unit work and would not do so unless there was a strike. The Board found that the union was not entitled to information about the non-unit employees because there was no evidence of any collective bargaining agreement violation. The Ninth Circuit agreed, finding that the union's suspicion was "totally unfounded." 548 F.2d at 869.

In reaching that conclusion, the court noted that the union's showing "must be more than a mere concoction of some general theory which explains how the information would be useful to the union in determining if the employer has committed some unknown contract violation." *San Diego Newspaper Guild*, 548 F.2d at 868. But "to require an initial, burdensome showing by the union before it can gain access to information which is necessary for it to determine if a violation has occurred defeats

the very purpose of the 'liberal discovery standard' of relevance which is to be used." *Id.* at 868-69. "[T]he solution is to require some initial, ***but not overwhelming***, demonstration by the union that some violation is or has been taking place." *Id.* at 869 (emphasis added).

The Ninth Circuit applied *San Diego Newspaper Guild* in *NLRB v. Associated General Contractors of California, Inc.*, 633 F.2d 766 (9th Cir. 1980). There, unions requested a roster of members in a contractor association to determine whether contractors were violating agreements by forming non-union employers to perform bargaining unit work (i.e., "double-breasting"). The Board and the court found that the unions met their burden of establishing relevance because they pointed to suspicious activity by contractors in the area and several instances of double-breasted operations. *Id.* at 771. Unlike in *San Diego Newspaper Guild*, the unions' suspicions were not "totally unfounded." *Id.* at 771 n.6. The contractor association argued that "no actual violations ha[d] been established," but the court explained that that argument "misconstrues the standard to be applied. It is sufficient that the information sought is relevant to *possible* violations . . . . Actual violations need not be established in order to show relevancy." *Id.* at 771 (emphasis added).

Here, Bemis's statement to Bland that National Techs were working in the area is more than enough to show that work diversion could be taking place. Local 768 did not have to produce evidence of *actual* work diversion when CenturyTel itself put the possibility that National Techs were performing bargaining unit work in the area on the table. Unlike in *San Diego Newspaper Guild*, Local 768's suspicions of work diversion were not totally unfounded, and CenturyTel had an obligation to respond.

### B. The Past Grievances and TCC Correspondence Further Prove that Local 768 Had a Reasonable Basis for Its Request.

#### 1. CenturyTel Waived Its Arguments Against Relying on Evidence Introduced at the Hearing.

CenturyTel objects to the Board's alternative finding that the TCC correspondence and past grievances independently establish the relevance of Local 768's request. Specifically, CenturyTel argues (1) that *employers* have a right to determine whether a union's request is reasonable, CenturyTel Br. 23-25; (2) that relying on evidence presented for the first time at the hearing violates employers' due process rights, *id.*; and (3) that materials not produced in response to its subpoena are

25

necessarily irrelevant, *id.* at 25-26, 34-36.[2]

First, this Court need not reach this issue. Local 768's information request on its face and certainly as further clarified in the conversation between Bland and Bemis establishes a reasonable basis for the union's request.

Regardless, the Court lacks jurisdiction to consider CenturyTel's argument. Under Section 10(e) of the NLRA, respondents must raise an argument before the Board to preserve that issue for review in court. But in its brief in support of its exceptions to the ALJ's decision, CenturyTel conceded that "there is no duty to inform the employer of the specific basis for the information request." JA466. CenturyTel never argued in its exceptions to the ALJ's decision that documents not provided in response

---

[2]     CenturyTel did subpoena Local 768 for "[a]ll documents . . . regarding IBEW's or Local 678's [sic] claim that Field Techs are/were performing work within the IBEW Local 768 alleged jurisdiction." JA384. And Local 768 did inadvertently fail to provide the TCC communications, 2018 grievances, and several emails between Local 768 and CenturyTel regarding the information request before the start of the hearing. JA46:10-15, 51:4-7, 53:19-24, 55:2-15, 60:7-12, 62:13-21, 79:12-13, 90:15-21. At one point, counsel for CenturyTel requested that unproduced documents be excluded as an evidentiary sanction. JA57:18-58:5. But the ALJ declined to exclude the documents, JA58:25-59:10, and counsel for the General Counsel went off the record to provide the remaining exhibits to counsel for CenturyTel, JA65:1-8.

to its subpoena should be treated as irrelevant to whether Local 768 had a reasonable belief about the relevance of the requested information. Even after the dissenting Board member raised the issue of whether the Board could consider evidence raised for the first time at the hearing, JA448-49, CenturyTel did not ask the Board to reconsider its decision on those grounds, meaning the Court cannot consider that issue now. *See UFCW Loc. 400 v. NLRB*, 989 F.3d 1034, 1037-38 (D.C. Cir. 2021).

### 2. The Board's Decision to Consider the Past Grievances and TCC Correspondence Was Right on the Merits.

The Board was correct that the TCC correspondence and past grievances "support[] a finding that the requested nonunit information is relevant to the Union's duties." JA445. "[T]he fact that unit work, of the same type, was being diverted to National Technicians" in other states, together with Bemis's statement that National Techs were working in Local 768's jurisdiction, "established reasonable cause to believe that diversion of work might be occurring here." *Id.* And Local 768's past grievances "resolved allegations of unilateral subcontracting of work and the use of nonunit employees to perform bargaining unit work in Northwest Montana." *Id.* Together with the TCC correspondence, those grievances show that the union had more than a "mere suspicion" that non-unit

employees might again be performing unit work. *Id.*

Therefore, Local 768's request was far more than a "bare assertion that it need[ed] information." *Detroit Edison Co. v. NLRB*, 440 U.S. 301, 314 (1979). Instead, its request was tied to possibly company-wide labor practices. The union sought information to determine "whether or not these National Technicians are performing bargaining unit work or have performed bargaining unit work previously." JA359. As Bland explained at the hearing, Local 768 asked for the number of National Techs in its jurisdiction, how long they were there, and their names to understand the extent of any work diversion. JA67:12-68:23. And information about supervision, dispatch, work-order closeout, and interactions with other systems, personnel, and facilities would help Local 768 understand the scope of National Techs' work as compared to CenturyTel technicians' work. JA69:13-78:1.

CenturyTel disagrees. With respect to the TCC correspondence, CenturyTel argues that "[t]he claims of remote sister locals [are] wholly unrelated to the bargaining relationship between the Union and the Company." CenturyTel Br. 26. CenturyTel also emphasizes that the information request was based on a template from the TCC, which "Bland

28

merely forwarded . . . for the apparent purpose of furthering the agenda of a council of sister locals." *Id.* at 33-34. The Board's decision, according to CenturyTel's dramatic conclusion, will result in "irrelevant, bromidic fishing expedition[s] on a grand scale . . . . Now unions can regurgitate requests drafted by someone else, with no independent basis for seeking the information, for the purpose of collecting employer information on a national scale." *Id.* at 34.

CenturyTel's argument is wrong and would destroy collective bargaining in the telecommunications industry. Telecommunications locals like Local 768 often bargain with a single employer (here, CenturyTel). But as the facts of this case show, terms and conditions of work at a single employer can be influenced by multistate parent companies like Lumen. Therefore, telecommunications locals rely on higher-level coordination and information-sharing arrangements to effectively bargain and enforce their collective bargaining agreements. *See* Jack Fiorito et al., *Union Structural Choices, in The State of Unions* 103, 123-24 (George Strauss et al. eds., 1991). Otherwise, parent companies like Lumen could transfer work to non-unit employees without warning and without consequence.

That's the purpose of the TCC, which brings together locals across the country representing units working for Lumen, CenturyLink, or CenturyTel. JA32:11-15. CenturyTel is right that, "but for the request from the TCC, [Bland might] not have sent the information request at all." CenturyTel Br. 33. But that just proves why the TCC is necessary. By alerting Bland to the possibility of work diversion in his expansive jurisdiction, the TCC worked exactly how it was supposed to. To respond, Local 768 requested information — information that CenturyTel confirmed was relevant when Bemis admitted that there *were* National Techs in the area. It is "irrelevant that the request for information was made in response to a suggestion by the [TCC] and conformed to a sample letter distributed by the [TCC]," because "the information sought relates to [Local 768's] bargaining responsibilities." *Oil, Chem. & Atomic Workers Loc. Union No. 6-418*, 711 F.2d at 352 n.4.

The Board and this Court have long found that anecdotal, secondhand evidence can form the basis for a reasonable belief of possible collective bargaining agreement violations. *See* NLRB Br. 34 (collecting cases). For example, in *George Koch & Sons, Inc.*, 295 N.L.R.B. 695 (1989), evidence of subcontracting at other jobsites supported the union's

30

reasonable belief that the employer may have set up a double-breasted operation that violated a collective bargaining agreement. *Id.* at 695 n.1, 699 & n.8. And in *Magnet Coal, Inc.*, 307 N.L.R.B. 444 (1992), *enforced mem.*, 8 F.3d 71 (D.C. Cir. 1993), the Board upheld the ALJ's reliance on secondhand reports of equipment interchange to find that the union had a reasonable belief that two companies could have been joint employers. *Id.* at 444 n.3, 448.

Unions can even rely on information about *other* employers and *other* employees to provide a reasonable basis for an information request. In *NLRB v. Leonard B. Hebert, Jr. & Co.*, 696 F.2d 1120 (5th Cir. 1983), the union learned that a signatory employer had formed a nonunion subsidiary to compete against other double-breasted contractors. Based in part on that evidence, the union requested information about *other* signatory contractors' nonunion operations. It was possible that the other signatory contractors were not actually double-breasted. But "the type of information sought by the Union would assist it in confirming its suspicions and thereby allow it to make an informed choice" about future steps. *Id.* at 1124. The union's knowledge about unrelated contractors supported the union's reasonable basis for its request.

Here, reports from other TCC locals suggested that Lumen was sending out National Techs to perform unit work. Coupled with Bemis's statement that National Techs were working in the area, those secondhand reports provided a reasonable basis for Local 768's belief that National Techs could have been performing its own members' work.

CenturyTel also argues that the Board should not have relied on Local 768's prior grievances, which were "(a) years old; (b) against the Company's predecessor; [and] (c) based on unrelated employees." CenturyTel Br. 34. But these three-year-old grievances, together with Bemis's statement to Bland and evidence from locals across the country, indicated that Local 768's members' work was at risk of diversion, meaning information about National Techs would be of use in determining whether unit boundaries were being respected. Local 768 had a reasonable basis for its request, and CenturyTel's continued refusal to provide the information amounts to a failure to bargain in good faith.

3. *The Board's Longstanding Practice of Considering Facts Raised for the First Time at the Hearing Is Consistent with the NLRA and CenturyTel's Due Process Rights.*

As explained above, the Board's longstanding practice is to evaluate relevance in light of "the entire pattern of facts." *Ohio Power Co.*, 216

N.L.R.B. at 991 n.9. That includes facts raised during the give-and-take of communications about the information request, as well as facts raised for the first time at the hearing.[3] CenturyTel's objection to that approach repackages an argument by the sole dissenting Board member, who claimed based on *Hertz Corp. v. NLRB*, 105 F.3d 868 (3d Cir. 1997) that considering evidence of relevance presented for the first time at the unfair labor practice hearing would allow a union to go on "a fishing expedition." JA449.

In *Hertz*, a union requested information about job applicants in connection with an investigation into possible discriminatory hiring practices. Because, in the court's view, the union never disclosed to the employer the facts underlying its belief that the employer was discriminating in hiring, the Third Circuit held that the employer had no duty to provide the information. 105 F.3d at 874. CenturyTel does not cite to *Hertz* in its brief, and for good reason: This Court has never adopted *Hertz*, and the Third Circuit has suggested that *Hertz* may be limited to

---

[3] *See* NLRB Br. 31-32 (collecting cases); *see also, e.g.*, *Diamond Trucking, Inc.*, 365 N.L.R.B. 646, 647 (2017); *Barnard Eng'g Co.*, 282 N.L.R.B. 617, 620 (1987); *Corson & Gruman Co.*, 278 N.L.R.B. 329, 334 (1986), *enforced*, 811 F.2d 1504 (4th Cir. 1987).

cases involving investigations of discrimination. *Crozer-Chester Med. Ctr. v. NLRB*, 976 F.3d 276, 288 n.11 (3d Cir. 2020).

Regardless, *Hertz* should not be adopted in this Circuit. This Court has approvingly cited Board decisions reviewing relevance in light of the entire pattern of facts, like *Ohio Power Co.* *See Oil, Chem. & Atomic Workers Loc. Union No. 6-418*, 711 F.2d at 363 n.40. And the Board's approach is consistent with Congress's delegation of authority to the Board, and not employers, for adjudicating when the duty to bargain and provide information applies. *Pub. Serv. Co. of N.M.*, 843 F.3d at 1004 (citing *Ford Motor Co.*, 441 U.S. at 496). The Board — not Century-Tel — was responsible here for determining if Local 768 had objective evidence supporting its reasonable belief that National Techs may have been diverting unit work. The Board did not err in considering evidence raised for the first time at the unfair labor practice hearing.

Nothing about the Board's approach violates CenturyTel's due process rights. In cases where the General Counsel alleges a failure to provide information, "due process is satisfied when a complaint gives a respondent fair notice of the acts alleged to constitute the unfair labor practice and when the conduct implicated in the alleged violation has been

fully and fairly litigated." *DirectSat USA, LLC v. NLRB*, 925 F.3d 1272, 1278 (D.C. Cir. 2019) (quoting *Pergament United Sales, Inc. v. NLRB*, 920 F.2d 130, 134 (2d Cir. 1990)). In *DirectSat*, the employer argued that the ALJ had violated its due process rights by requiring disclosure of an agreement on grounds that were not advanced by the General Counsel. But because the complaint alleged that the employer "had 'failed and refused to furnish' the unredacted agreement, which was 'necessary for, and relevant to, [the Union's] performance of its duties as the exclusive collective-bargaining representative,'" and because the employer itself addressed that argument in its briefing to the ALJ, this Court held that there was no due process violation. *Id.* at 1278-79 (alteration in original).

Here, the General Counsel's complaint set out the union's information request, JA155-56, alleged that the requested information was "necessary for, and relevant to, the Union's performance of its duties as the exclusive collective-bargaining representative of the Unit," JA157, and alleged that CenturyTel "has failed and refused to provide the Union with the information it requested," *id.* That means CenturyTel had fair notice that its acts — withholding information about National Techs that was requested by Local 768 — allegedly constituted an unfair labor

practice.

### 4. The ALJ Did Not Abuse Her Discretion in Declining to Exclude Materials Not Produced in Response to CenturyTel's Subpoena.

This Court reviews procedural rulings for abuse of discretion, remanding "only if the petitioner establishes that prejudice resulted from the Board's procedural lapses." *Napleton 1050, Inc.*, 976 F.3d at 39 (quoting *Salem Hosp. Corp. v. NLRB*, 808 F.3d 59, 67 (D.C. Cir. 2015)) (cleaned up). ALJs have wide discretion in deciding whether to impose sanctions for subpoena noncompliance. *McAllister Towing & Transp. Co.*, 341 N.L.R.B. 394, 396 (2004), *enforced per curiam*, 156 F. App'x 386 (2d Cir. 2005). An ALJ does not err by declining to impose a sanction when the refusal to comply was inadvertent and does not cause any prejudice. *E.g.*, *Champ Corp.*, 291 N.L.R.B. 803, 803-04 (1988), *enforced*, 913 F.2d 639 (9th Cir. 1990).

Here, there was no prejudice, because Local 768's inadvertent failure to turn over the documents was remedied during the hearing when counsel for the General Counsel provided in advance all of the exhibits. JA65:1-8. As a result, the union's failure to provide the emails and prior grievances in response to CenturyTel's subpoena is not itself reason to

treat those documents as irrelevant.

## CONCLUSION

This Court should grant the NLRB's application for enforcement and deny CenturyTel's petition for review.

Respectfully submitted,

/s/ Jacob J. Demree
Jonathan D. Newman
Jacob J. Demree
SHERMAN DUNN, P.C.
900 Seventh Street, N.W.
Suite 1000
Washington, D.C. 20001
(202) 785-9300
newman@shermandunn.com
demree@shermandunn.com

*Counsel for Intervenor International Brotherhood of Electrical Workers Local Union 768*

April 11, 2025

**CERTIFICATE OF COMPLIANCE**

1. This document complies with the type-volume limit of Circuit Rule 32(e)(2)(B)(i) because, excluding the parts of the document exempted by Rule 32(f), it contains 7,137 words.

2. This document complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word 365 in Century Schoolbook font and fourteen-point type.

/s/ Jacob J. Demree
Jonathan D. Newman
Jacob J. Demree
SHERMAN DUNN, P.C.
900 Seventh Street, N.W.
Suite 1000
Washington, D.C. 20001
(202) 785-9300
newman@shermandunn.com
demree@shermandunn.com

*Counsel for Intervenor International Brotherhood of Electrical Workers Local Union 768*

**CERTIFICATE OF SERVICE**

I certify that on April 11, 2025, this brief was filed using the Court's CM/ECF system. All attorney participants in the case are registered CM/ECF users and will be served electronically via that system.

/s/ Jacob J. Demree
Jonathan D. Newman
Jacob J. Demree
SHERMAN DUNN, P.C.
900 Seventh Street, N.W.
Suite 1000
Washington, D.C. 20001
(202) 785-9300
newman@shermandunn.com
demree@shermandunn.com

*Counsel for Intervenor International Brotherhood of Electrical Workers Local Union 768*