# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 15, 2025          Decided January 13, 2026

No. 24-1346

CenturyTel of Montana, Inc., a subsidiary of Lumen
Technologies, Inc.,
Petitioner

v.

National Labor Relations Board,
Respondent

International Brotherhood of Electrical Workers
Local Union 768,
Intervenor

———

Consolidated with 24-1352

———

On Petition for Review and Cross-Application
for Enforcement of an Order
of the National Labor Relations Board

———

*Patrick R. Scully* argued the cause for petitioner.  With him
on the briefs was *Monica J. Frascona*.

2

*Jared D. Cantor*, Senior Attorney, National Labor Relations Board, argued the cause for respondent.  With him on the brief were *William B. Cowen*, Acting General Counsel, *Ruth E. Burdick*, Deputy Associate General Counsel, *Meredith Jason*, Assistant General Counsel, and *Usha Dheenan*, Supervisory Attorney.

*Jacob J. Demree* argued the cause for intervenor in support of respondent.  With him on the brief was *Jonathan D. Newman*.

Before: PAN and GARCIA, *Circuit Judges*, and ROGERS, *Senior Circuit Judge*.

Opinion for the Court by *Senior Circuit Judge* ROGERS.

ROGERS, *Senior Circuit Judge*: The National Labor Relations Board ruled that CenturyTel of Montana, Inc., violated Sections 8(a)(5) and (1) of the National Labor Relations Act ("the Act"), 29 U.S.C. § 158(a)(5), (1), by failing to furnish information requested by the International Brotherhood of Electrical Workers, Local Union 768 ("the Union") on non-union technicians working within the Union's jurisdiction.  CenturyTel petitions for review on several grounds, in an attempt to show that the Board's decision was not supported by substantial evidence.  For the following reasons, the court denies the petition and grants the Board's cross-application for enforcement of its order.

**I.**

CenturyTel provides telephone and data services as a subsidiary of Lumen Technologies, Inc., a national telecommunications company.  It has had a collective

3

bargaining agreement ("CBA") with the Union for decades.
The Union represents employees in northwest Montana who
perform installation, maintenance, and repair work for
businesses and residences.  Among the attachments to the
operative CBA is a letter of understanding on crossing
jurisdictional boundaries, which states that CenturyTel "may
have employees from other bargaining units work within this
bargaining unit's jurisdiction only when no employees from
this bargaining unit are available or to help during
emergencies."    Ltr. of Understanding, CenturyTel of
Washington, Inc., CenturyTel of Oregon, Inc., CenturyTel of
Montana, Inc. and Locals 89 and 768, IBEW, AFL-CIO, at 103
(July 1, 2020).

On July 27, 2021, the Union's business manager, George
Bland, received an email from the Telecommunications
Council, a group of local member unions of the International
Brotherhood of Electrical Workers ("IBEW") that represent
employees of CenturyTel and other Lumen entities throughout
the United States.  The email, sent to union representatives
across the country, referred to a report from a union local that
Lumen was using non-union National Technicians to perform
work in the local union's area.  Union locals in Missouri and
Texas responded that National Technicians were working in
their areas.  On August 9, the Council sent Bland and other
locals a model information request regarding CenturyTel's use
of National Technicians.

Bland sent the information request to Lumen's regional
manager, John Bemis, on August 10.  In a covering email,
Bland stated "the attached information request [was] regarding
National Techs working in Local 768's jurisdiction," and
Bemis should "call with any questions."  The request itself
stated the information was "for purposes of monitoring the
collective bargaining agreement between the parties and the

4

investigation, preparation and processing of grievances in the event the Union feels there has been a violation of any provision(s) therein." There were eighteen questions about the number of National Technicians working in the Union's "jurisdiction," how long they had worked there, the nature of their work, and the job descriptions of certain Union positions.

Bemis called Bland upon receiving the email. The two men had worked together for a number of years, and he was curious whether there were outstanding grievances. During the call, Bemis mentioned there were two National Technicians working in Montana. Lacking details, Bemis forwarded the information request to Arnell Anderson, the national team's manager for processing. A stream of emails followed. On August 25, 2021, having heard nothing, Bland notified Bemis and Anderson that the Union was filing an unfair labor practice charge with the Board for "failure to provide or communicate [CenturyTel's] intent regarding this information request." Anderson promptly responded the team was working on the request and would respond as soon as "appropriate information" was available.

On September 1, 2021, Lumen Senior Human Resources Advisor Keller Noble responded. Noble stated she was working on the requested job descriptions and would provide them once they were available. In an attached letter, Noble confirmed two National Technicians were working in Montana, provided an overview of their responsibilities, and stated National Technicians were not performing unit bargaining work. Ltr. from Keller Noble to George Bland (Sept. 1, 2021). With respect to the questions about the number and length of time National Technicians were or had worked in the northwest Montana area, Noble asked "[w]hy is this information relevant to administering your Collective Bargaining Agreement when these Lumen employees are not

5

represented by [the Union] and are not performing bargaining unit work?" *Id.*

Bland replied on September 13. He appreciated "the Company's assertion" that the National Technicians were "not performing bargaining unit work," but pointed out "the Union has the right to make an *independent* determination" of whether the technicians were performing such work or had done so in the past and for how long. He inquired whether Noble had the requested job descriptions. Noble provided one job description that day and three more nine days later. When Bland then inquired the following day about answers to the remaining unanswered questions, Noble responded that the requested information about the National Technicians was "outside the scope of [the Union's] jurisdiction as outlined in the collective bargaining agreement" because they were not part of the bargaining unit. Bland replied the Union's request would be within the scope of its jurisdiction if "non-bargaining unit members are performing the work of employees who are covered by the CBA." Bland renewed again the request for information, with a response by September 29.

On October 1, 2021, the Union filed an unfair labor practice ("ULP") charge with the Board. Thereafter the Board General Counsel filed a complaint on April 27, 2022, alleging that CenturyTel violated Section 8(a)(5) and (1) of the Act by failing and refusing to bargain collectively and in good faith with the Union as the exclusive bargaining representative of the unit, due to its failure to respond to the Union's request for information, which was "necessary for, and relevant to, the Union's performance of its duties." Compl. ¶ 6(b). Following an evidentiary hearing, the administrative law judge ("ALJ") found that the General Counsel had met the burden to prove the allegations by a preponderance of the evidence. *CenturyTel of*

6

*Mont., Inc.*, Case No. 19-CA-283839, slip op. at 1 (Dec. 6, 2022) ("ALJ Dec.").

Bland, Bemis, and Noble testified at the ULP hearing. As relevant, Bland testified that Bemis had admitted during his August 2021 call there were "a couple" of National Technicians that were either working or had worked in the Union's "jurisdiction" or in its "area." Hearing Tr. 51-52, 130 (June 14, 2022). Bemis testified that he called Bland upon receiving the August 10 email to find out whether there were any forthcoming grievances of which he was unaware, and that he did not "believe" he referred to the Union's "jurisdiction" in responding there were two National Technicians working in Montana. Hearing Tr. at 141-42. "On balance," the ALJ credited Bland's version of the call "as far more likely, given the stated subject matter of the email that inspired [Bemis] to initiate the call . . . ." ALJ Dec. at 5. (The ALJ noted the terms "area" and "jurisdiction" were used "interchangeably" by the parties. *Id.* at 5 n.8.) It was "undisputed that the parties had a history of disagreement over what constituted work within [the Union's] jurisdiction or 'area,'" *id.* at 12; the Union had filed and settled two grievances in 2018 alleging that CenturyLink (a predecessor company) violated the CBA by using non-union personnel in 2017 and 2018 to perform bargaining unit work in the Union's Market Area. And Bemis, the ALJ observed, "did not deny that unit work was being performed by the National [Technicians] but instead obfuscated, admitting they had 'been' in the Union's jurisdiction 'a few times.'" *Id.* The ALJ therefore concluded the relevance of the requested information should have been apparent to CenturyTel. *Id.* (citing *Murray Am. Energy*, 366 NLRB No. 80, slip op. at 29).

The ALJ rejected as meritless CenturyTel's objections that (1) it was not obligated to respond to the information request because the Union failed to establish "an objective factual basis

7

for its belief that the [National Technicians] were, in fact, performing unit work," and (2) alternatively, CenturyTel had provided "every piece of information outlined" in the General Counsel's complaint. *Id.* (citation, emphasis, and internal quotation marks omitted). The ALJ also overruled CenturyTel's objections to admission of the Telecommunications Council's August 9 email (attaching a model information request that Bland used as a template) and the 2018 grievances, on the ground the Union had produced neither in response to a pre-hearing subpoena. Stating that preservation or diversion of unit work is a subject of mandatory bargaining under the Act, the ALJ found that the Union's information requests "were plainly aimed at ascertaining whether [CenturyTel] had been violating the parties' contract by utilizing the National [Technicians] to perform [Union] work." *Id.* (citing *New York & Presbyterian Hosp. v. NLRB*, 649 F.3d 723, 730 (D.C. Cir. 2011)). Further, "[e]ven assuming that the relevance of the Union's request was not apparent to [CenturyTel] upon its receipt" of the information request on August 10, "the Union was hardly acting on a 'mere suspicion' when it continued to pursue the requested information," "especially considering Bemis' admission that the National Techs had been present in [the Union's] 'area'" during his subsequent phone call with Bland. *Id.* at 13-14. The ALJ therefore ruled that CenturyTel violated Section 8(a)(5) and (1) by failing to supply relevant requested information to the Union and ordered CenturyTel to cease and desist, provide the remaining information as alleged in the complaint, and post a notice describing the violation. CenturyTel filed exceptions, and the General Counsel filed an answering brief to which CenturyTel responded.

The Board affirmed the ALJ's rulings, factual findings, and conclusions of law, as clarified, and adopted the Order, as modified. *CenturyTel of Montana, Inc.*, 373 NLRB No. 128,

8

at 1 & n.2 (Oct. 10, 2024).  The Board agreed the Union had established that the requested information about National Technicians was relevant to its duties at the time of the request. First, the Union established and demonstrated to CenturyTel the relevance of the requested information about the National Technicians on August 10, upon making its information request.  *Id.* at 3.  The Board adopted the ALJ's "well-reasoned credibility determinations," finding Manager Bemis had made a "contemporaneous admission" on August 10 that "National Technicians had worked in the Union's jurisdiction." *Id.* at 3. Second, the relevance of the information request should have been "readily apparent" to CenturyTel "under the circumstances on August 10" based on the Bland-Bemis call. *Id.* at 4.  Third, the Union demonstrated the relevance of the requested information at the ULP hearing with evidence of the August 10 Bland-Bemis call, the 2018 grievances and settlements, and Telecommunications Council reports that National Technicians had been performing bargaining unit work in two other states.  Acknowledging CenturyTel had learned of some of this evidence for the first time at the ULP hearing, the Board pointed to its "longstanding" precedent that "a union is not obligated to disclose the factual basis for its information request at the time of the request." *Id.* at 3 (citing *Cannelton Indus., Inc.*, 339 NLRB 996, 997 (2003); *Brazos Elec. Power Coop., Inc*., 241 NLRB 1016, 1018-1019 (1979), *enf'd. in relevant part* 615 F.2d 1100 (5th Cir. 1980)).  "Rather, it is sufficient that the General Counsel demonstrate at the hearing that the union had, at the relevant time, a reasonable belief." *Id.* (quoting *Cannelton Indus., Inc.*, 339 NLRB at 997). The Board noted CenturyTel did not request the Board to overrule its longstanding precedent allowing the General Counsel to demonstrate relevance at the ULP hearing, and that even if it had, the result would be the same.  *Id.* at 4-5.

9

One Member dissented.  He concluded the Union failed to establish relevance because it had not provided CenturyTel, prior to the ULP hearing, with "objective evidence underlying its belief that the information was relevant." *Id.* at 6 (Member Kaplan, dissenting).  He urged the Board to adopt the standard in *Hertz Corp. v. NLRB*, 105 F.3d 868, 874 (3d Cir. 1997), to require a union to provide factual evidence of relevance when making a request for information.  *Id.* at 6, 8.

## II.

CenturyTel petitions for review, and the Board cross-applies for enforcement of its Order.

### A.

Section 8(a)(5) of the National Labor Relations Act ("the Act") provides that it is an "unfair labor practice for an employer . . . to refuse to bargain collectively with the representatives of his employees."  29 U.S.C. § 158(a)(5). Violation of subsection (a)(5) "results in a derivative violation of section 8(a)(1)," which provides that employers who "interfere with, restrain, or coerce employees in the exercise of the[ir] rights guaranteed by the [Act] have committed an unfair labor practice."  *Crozer-Chester Med. Ctr. v. NLRB*, 976 F.3d 276, 284 (3d Cir. 2020) (citations and internal quotation marks omitted).

Although the text of the Act does not expressly require employers to provide relevant information upon request, the Board construed the Act to include this requirement shortly after the Act was enacted.  In *Pioneer Pearl Button Co*., 1 NLRB 837, 842 (1936), employees sought a revised wage and hourly scale and the employer responded with a reduced wage scale and increased hours.  When collective bargaining

10

commenced after some employees had formed a union, the
employer claimed that it could not offer higher wages or
reduced hours because of its poor financial condition, but it
offered no evidence or alternative proposal and declined the
union's request to produce its books or have them audited. *Id.*
at 842-43.  The Board found that the employer was on notice
of the requested pay and hourly scale and therefore was
obligated under the Act to meet with the union, and did not do
so until considerable time had passed.  *Id.*    Further, the
employer's "attitude was peremptory and non-conciliatory
even though the employees had been on strike for several
months." *Id.* at 843.  Given the employer's "assertion that the
[company's] financial condition was poor," and a refusal
"either to prove [the] statement, or to permit independent
verification," the Board concluded the employer's refusal to
bargain with the employees' representative interfered with,
restrained, and coerced the employees in the exercise of the
rights guaranteed by Section 7 of the Act, *id.*, which include
the right to organize, form or join a union, and bargain through
their representatives with the employer, 29 U.S.C. § 157.

   In *NLRB v. Truitt Manufacturing Co*., 351 U.S. 149, 153
(1956), the Supreme Court addressed similar circumstances.
As in *Pioneer Pearl Button Co*., the employer refused to
provide information about the financial ability to pay increased
wages, arguing that the requested information was irrelevant to
the bargaining process and related to matters exclusively within
the province of management.  *Id.* at 151.  The Court affirmed
the Board's reasoning that good-faith bargaining necessitates
both sides having access to information bearing on the
bargaining process. *Id.* at 152-53 (citing *Pioneer Pearl Button
Co*., 1 NLRB at 842-43).

   The Board and the Supreme Court have adhered to this
interpretation of the Act.  *See, e.g., NLRB. v. Acme Indus. Co.*,

11

385 U.S. 432, 435-36 (1967) (citing *Truitt Mfg. Co.*, 351 U.S. 149) (enforcing *Acme Indus. Co.*, 150 NLRB 1463 (1965)). The requirement to provide requested information, therefore, "derive[s] from the statutory duty to bargain." *Public Serv. Co. of New Mexico v. NLRB*, 843 F.3d 999, 1004 (D.C. Cir. 2016) (enforcing *Public Serv. Co. of New Mexico*, 360 NLRB 573 (2014)).

**B.**

CenturyTel challenges each of the grounds on which the Board found that the General Counsel had established the relevance of the requested information. It contends broadly that "the Board disregarded substantial evidence and departed from established precedent" by removing "any requirement that relevance must be based on a reasonable belief or supported by objective evidence." Pet'r's Br. at 20. It contends specifically that the Board lacked substantial evidence to find (1) the August 10 Bland-Bemis phone call demonstrated the relevance of the Union's information request, (2) the circumstances on August 10 made the relevance of the information apparent, and (3) in any event, the evidence at the ULP hearing established relevance. *Id.* 20, 26, 31-41. The court will overturn the Board's decision "only if the Board's factual findings are not supported by substantial evidence, or the Board acted arbitrarily or otherwise erred in applying established law to the facts of the case." *Windsor Redding Care Ctr., LLC v. NLRB*, 944 F.3d 294, 299 (D.C. Cir. 2019) (citation and internal quotation marks omitted). "A Board finding is supported by substantial evidence so long as 'a reasonable mind might accept a particular evidentiary record as adequate to support a conclusion.'" *CP Anchorage Hotel 2, LLC v. NLRB*, 98 F.4th 314, 322 (D.C. Cir. 2024) (quoting *Dickinson v. Zurko*, 527 U.S. 150, 162 (1999)).

12

The Union bears the burden of establishing that it sought relevant information because it was seeking information about non-union employees. *New York & Presbyterian Hospital v. NLRB*, 649 F.3d 723, 730 (D.C. Cir. 2011). *Presbyterian Hospital* is a hallmark decision in this circuit. "A union's bare assertion that it needs information" would be insufficient; instead "the union must explain to the employer why the information is relevant." *Id.* (quoting *Detroit Edison Co. v. NLRB*, 440 U.S. 301, 314 (1979)). "[T]he threshold for relevance is low," however, and "the union need not demonstrate the existence of some particular controversy or the need to dispose of some recognized problem." *Teachers College, Columbia Univ.,* 902 F.3d at 302 (quoting *Presbyterian Hosp.*, 649 F.3d at 730). Instead, relevance is assessed under "a discovery-type standard," where the "fact that the information is of probable or potential relevance" to the Union's responsibilities "is sufficient to give rise to an obligation" to provide it. *Presbyterian Hosp.*, 649 F.3d at 730 (quoting *Acme Indus. Co.*, 385 U.S. at 437; then quoting *Oil, Chem. & Atomic Workers Loc. Union No. 6-418, AFL-CIO v. NLRB*, 711 F.2d 348, 359 (D.C. Cir. 1983)). Relevance is "examined as of the time of the demand and refusal." *Id.* at 731 (quoting *Gen. Elec. Co. v. NLRB*, 916 F.2d 1163, 1169 (7th Cir. 1990)).

Substantial evidence supports the Board's conclusion that the Union had "a reasonable belief, supported by objective evidence," that the information sought from CenturyTel was "relevant to the performance of its duties as the bargaining representative." *DirectSat USA LLC v. NLRB*, 925 F.3d 1272, 1278 (D.C. Cir. 2019) (quoting *Disneyland Park*, 350 NLRB 1256, 1258 (2007)). Although the Board relied on new evidence of the Union's reasonable belief at the ULP hearing, Board precedent permits that practice, and CenturyTel forfeited any challenge to that precedent.

13

The Board agreed with the ALJ that the Union had demonstrated to CenturyTel the relevance of the information request about National Technicians when it made the request on August 10. *CenturyTel*, 373 NLRB at 3. Reviewing the testimony before the ALJ — when Manager Bemis had responded on August 10 to Bland's question whether any National Technicians had been working in the Union's jurisdiction, "a few times but not very many" — the Board concluded Bemis's "contemporaneous admission" established the relevance of the requested information and was unpersuaded by CenturyTel's and the dissenting Member's attempts to minimize the significance of the August 10 call. *Id.* In the Board's words: "Of course, Manager Bemis was aware of his own admission and that the Union sought the information to protect unit work from diversion," and there was "no reason to disturb the judge's well-reasoned credibility determinations." *Id.* Further, "the Union can hardly be faulted for its assiduousness in pursuing the request for information regarding exactly what work the National Technicians performed when Bemis admitted that they had been working in the Union's area." *Id*. at 3-4.

CenturyTel acknowledges that "[a] hint of relevance possibly may have attached if the parties had in fact been using the terms 'jurisdiction' and 'area' interchangeably." Pet'r's Br. 39. That is what the ALJ found, ALJ Dec. at 5 n.8, and what the Board confirmed, *CenturyTel*, 373 NLRB at 3. Regardless, "[w]hen confronted with competing versions of evidence, [the court will] defer to the Board's credibility determinations absent the starkest error." *Constellium Rolled Prods. Ravenswood, LLC v. NLRB*, 45 F.4th 234, 243 (D.C. Cir. 2022) (citation omitted). CenturyTel points to no such error.

The Board's findings and reasoning refute CenturyTel's other challenges to the Decision as well. On the ground that

14

the relevance of the Union's information request was not apparent to Manager Bemis on August 10, Petitioner's Br. 31, the Board explained why "the relevance of the requested information should have been readily apparent to [CenturyTel]" on August 10: Manager Bemis called Bland upon receiving the August 10 email, and having been put "on notice that the Union was seeking information regarding a possible diversion of unit work," Bemis told Bland that National Technicians had worked in the Union's "jurisdiction." *CenturyTel*, 373 NLRB at 4. On the ground that substantial evidence to support the Board's findings was not presented at the ULP hearing, the evidence before the Board included Bland's August 10 email to Bemis attaching the information request; Bemis' phone call to Bland on August 10 regarding the Union's information request; the prior Telecommunications Council emails advising Bland that National Technicians were performing local bargaining unit work in Texas and Missouri, and that he should inquire about whether this was occurring in his Union's "jurisdiction"; and the 2018 grievances filed and settled with a predecessor company alleging unlawful diversion of Union bargaining unit work to non-union personnel in northwest Montana.

CenturyTel nonetheless contends that the General Counsel "cannot establish relevance for the first time at the unfair labor practice hearing." Pet'r's Br. at 22. In petitioning for review, CenturyTel does not contest its statutory obligation to provide information necessary for the Union to carry out its representational responsibilities. Nor does it adopt the dissenting Member's position that the Board should abandon its precedent allowing the General Counsel to show relevance of requested information at the ULP hearing and require the Union, as in the Third Circuit in *Hertz Corp.,* 105 F.3d at 874, "to apprise [CenturyTel] of *facts* tending to support its request for non-unit information." *CenturyTel*, 373 NLRB at 6

15

(Member Kaplan, dissenting) (citation and internal quotation marks omitted); *see* Pet'r's Reply Br. at 2 n.1. Instead, CenturyTel contends evidentiary and procedural failures require reversal of the Board's decision. It would have the court overlook the sources of evidence underlying the Board's conclusion that the Union's information request was based on "a reasonable belief" that CenturyTel may have been diverting work. *CenturyTel*, 373 NLRB at 4 (quoting *Bentley-Jost Elec. Corp.*, 283 NLRB 564, 568 (1987)).

In CenturyTel's view, the Board could not rely on the 2018 grievances, the Telecommunications Council's information request template, and correspondence between Bland and Noble because this evidence was not produced in response to the pre-hearing subpoena. This contention doubly fails. CenturyTel did not include this objection in the exceptions to the Decision, much less show an abuse of discretion by the ALJ in admitting this evidence, *Cadillac of Naperville, Inc. v. NLRB*, 14 F.4th 703, 712 (D.C. Cir. 2021), or that the ALJ was required to disregard as irrelevant any material not produced as called for in the subpoena, *see, e.g.,* Hearing Tr. at 44-51, 53-55, 90. Moreover, the court has no occasion to address CenturyTel's claim that its due process rights were violated when the Board relied on evidence introduced for the first time at the ULP hearing. Pet'r's Br. 24-25. CenturyTel did not raise this in exceptions to the Decision, nor in a petition for Board rehearing, and offers no explanation for the failure to do so. *See* 29 U.S.C. § 160(e); *HealthBridge Mgmt, LLC v. NLRB*, 798 F.3d 1059, 1069 (D.C. Cir. 2015).

So too CenturyTel may have forfeited its argument that the Union acted in bad faith when, in responding to the pre-hearing subpoena, it failed to disclose that it had not drafted the information request. Pet'r's Br. at 32-34. Bland acknowledged on cross examination that he had mistakenly failed to produce

16

the Telecommunications Council's August 9 email in response to the subpoena. Hearing Tr. 55. Neither the ALJ nor the Board found bad faith. CenturyTel did not expressly reference noncompliance with the subpoena in its exceptions. Even now, CenturyTel fails to explain how the Union acted in bad faith absent a requirement to disclose such evidence prior to the hearing.

CenturyTel also challenges the Board's reliance on the 2018 grievances, which it characterizes as "distant, sparse, and irrelevant," having occurred several years ago involving its predecessor. Pet'r's Br. 34-35. Yet the Board reasonably focused on them because they involved the same type of "allegations of unilateral subcontracting of work and the use of non-unit employees to perform bargaining unit work in Northwest Montana." *CenturyTel*, 373 NLRB at 4.

CenturyTel's challenges therefore fail in view of the substantial evidence of relevance, considered in light of the surrounding circumstances, which permitted the Board to find that Bland's August 10 email to Manager Bemis as well as Bemis's response put CenturyTel on notice of sufficient relevant facts that explained the objective basis for "the information request regard[ing] whether 'National Techs [were] working in [the Union's] jurisdiction.'" *CenturyTel*, 373 NLRB at 2 (alterations in original); *see Brazos*, 241 NLRB at 1018. Unlike *Disneyland Park*, 350 NLRB at 1258, on which CenturyTel relies, Pet'r's Br. 28, both the August 10 email and phone call informed CenturyTel management "that the Union sought the information to protect unit work from diversion." *CenturyTel*, 373 NLRB at 3. Likewise misplaced is CenturyTel's reliance on the concurring opinion in *Teachers College*, 902 F.3d at 308 (Silberman, J., concurring), given the evidence in support of the Board's finding that the purpose of the Union's information request was apparent on August 10 to

17

Bemis, who was Lumen's regional manager.  *CenturyTel*, 373 NLRB at 4.  Because the Board properly concluded that the evidence and context supported a reasonable belief regarding diversion of Union work, *id.*, CenturyTel's reliance on *San Diego Newspaper Guild, Local No. 95 v. NLRB*, 548 F.2d 863, 869 (9th Cir. 1977), and *G4S Secure Sols. (USA), Inc.*, 369 NLRB No. 7, at *2 (Jan. 9, 2020), is misplaced.  In *Newspaper Guild, Local No. 95,* the request was "apparently grounded only upon the Union's suspicion that some contract violation is or has been taking place," 548 F.2d at 869, and *G4S Secure* was similarly based on "suspicion alone," 369 NLRB, at *2.

Accordingly, the court denies CenturyTel's petition and grants the Board's cross-application for enforcement.